**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LUCIUS SMITH, | : | Civil Action No. 19-12691 (JMV) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BRUCE DAVIS, | : | |
| | : | |
| Respondent. | : | |

**VAZQUEZ, District Judge:**

Petitioner is a state prisoner currently incarcerated at New Jersey State Prison, in Trenton, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (D.E. 1.) For the reasons explained in this Opinion, the Court will deny the Petition and will not issue a certificate of appealability.

### I.    BACKGROUND

The New Jersey Superior Court, Appellate Division summarized the underlying circumstances of this case on direct appeal:

> After a jury trial, defendant was found guilty of felony murder, *N.J.S.A.* 2C:11–3(a)(3); first-degree robbery, *N.J.S.A.* 2C:15–1; conspiracy to commit robbery, *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:15–1; and aggravated assault, *N.J.S.A.* 2C:12–1(b). The jury acquitted defendant of two counts charging him with weapons offenses. The judge imposed a forty-year sentence on the felony murder count, merging the convictions on the other three counts. The custodial term was subject to an eighty-five percent parole ineligibility period pursuant to the No Early Release Act ("NERA"), *N.J.S.A.* 2C:43–7.2.

The State established the following pertinent facts in the three days of trial testimony. On the evening of February 24, 2009, defendant played dice with several other persons at an outdoor location in Jersey City. After the dice game ended, defendant and others noticed the victim, an apparently inebriated Hispanic male, staggering by. Defendant then took part in what one of his co-defendants described as a "game" of "knock out," in which they would accost and attack a pedestrian and try to render that person unconscious.

Although there were some variations among the witnesses about the exact sequence of events, the proofs essentially showed that defendant and about eight other men surrounded the victim, chased him under an overpass, took his wallet and belongings, and beat him with a brick. An autopsy revealed that the victim died from the attack due to blunt force trauma to his head, which had fractured his skull.

Part of the episode was filmed from across the street by a fixed surveillance camera. Several of the co-perpetrators entered into plea agreements with the State, implicating defendant as the person who took the victim's wallet and also as the person who held the brick. Fragments of a brick were recovered from the area. The wallet, which turned out to have no money in it, was apparently discarded and was not recovered.

Defendant, who was tried individually, did not testify or present any witnesses. In summation to the jury, his trial counsel argued that the co-perpetrators who had testified for the State lacked credibility, and that there was no reliable proof that defendant struck the victim with the brick or that he was the person who had taken the victim's wallet. Defense counsel also contended that the assault on the victim and the theft of his wallet were discrete and separate events. Counsel asserted that the State had failed to establish that those actions formed an integrated act of robbery, and thus there was no eligible predicate offense of robbery to support the felony murder charge.

*State v. Smith*, No. A-1176-12T4, 2015 WL 4133190, at *1 (N.J. Super. Ct. App. Div. July 10, 2015) (footnotes omitted).  The Appellate Division affirmed the convictions, *id*. at *2, and the Supreme Court of New Jersey denied Petitioner's petition for certification. *State v. Smith*, 127 A.3d 701 (N.J. 2015).

Petitioner later filed a petition for post-conviction relief ("PCR"), and the PCR court denied the petition. *State v. Smith*, No. A-2294-16T2, 2018 WL 3826061, at *1 (N.J. Super. Ct. App. Div. Aug. 13, 2018). The Appellate Division affirmed on PCR appeal, *id*. at *1, and the Supreme Court of New Jersey denied Petitioner's PCR petition for certification. *State v. Smith*, 203 A.3d 891 (N.J. 2019).

Petitioner filed the instant Petition in May of 2019. (D.E. 1.) Respondent filed an Answer opposing relief, (D.E. 9), and Petitioner did not file a reply. Petitioner raises the following claims[1] in his Petition:

    1. The trial court denied defendant a fair trial and due process of law by refusing to allow the jury to consider theft as an alternative verdict to robbery and, by necessary inference, felony murder. (D.E. 1, at 17.)

    2. Evidence of uncharged acts of robbery occurring at unspecified times prior to the date of the instant offenses should not have been admitted because they were irrelevant and posed a tremendous risk of undue prejudice. (*Id*. at 18.)

    3. The jury was not instructed on the elements of first-degree robbery, as charged in count three of the indictment. Therefore, if defendant's convictions are reversed because of the errors identified in Points I and/or II, on retrial, defendant can only be convicted of second-degree robbery on[] count three. (*Id*. at 20.)

    4. Defendant's sentence is manifestly excessive and unduly punitive. (*Id*. at 22.)

    5. Petitioner was denied the effective assistance of counsel constitutionally guaranteed to him at the trial level, necessitating granting his petition for post-conviction relief. U.S. Const., Amends. VI, XIV; N.J. Const. Art. I, Par[.] 10. (*Id*. at 23.)

---

[1] The Court has omitted the last sentence of each claim, where Petitioner adds, "this violated petitioner's right to due process, and equal protection of the law as guaranteed by the United States Constitution and the Fourteenth,[sic] Amendments thereto." (D.E. 16–34.) The Court will, of course, address the relevant constitutional rights at issue.

6. The petitioner was denied the effective assistance of counsel when trial counsel advised defendant to refrain from testifying at the time of trial. (*Id*. at 25.)

7. Petitioner was denied the effective assistance of counsel when trial counsel fail[ed] to advise [Petitioner] in regard to the plea offer. (*Id*. at 27.)

8. The petitioner was denied the effective assistance of counsel constitutionally guaranteed to him at trial because trial counsel failed to file a motion to dismiss the murder charge. (*Id*. at 28.)

9. Counsel's failure to challenge the indictment for the unsustainable charge of robbery subsequently used to establish the elements of felony murder amounted to ineffective assistance because counsel's inaction could not be categorized as a strategic choice. (*Id*. at 30.)

10. Petitioner['s] conviction must be reversed since petitioner has been denied effective assistance of trial [counsel], pursuant to the United States Constitution, Amendment VI, and XIV, and the New Jersey Constitution of 1947, Art. 1, ¶ 1, and Art. 1 ¶ 10. (*Id*. at 31–32.)

## II.    STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

>    (1)    resulted in a decision that was contrary to, or involved an
>    unreasonable application of, clearly established Federal law, as
>    determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable
>    determination of the facts in light of the evidence presented in the
>    State court proceeding.

28 U.S.C. § 2254(d).  Moreover, AEDPA deference applies even when there has been a summary

denial.  *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as

opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court

decision.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S.

362, 412 (2000))).  "Under the contrary to clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question

of law or if the state court decides a case differently than [the Supreme Court] has on a set of

materially indistinguishable facts."  *Williams*, 529 U.S. at 412–13 (internal quotation marks

omitted).  As to § 2254(d)(1), a federal court must confine its examination to evidence in the

record.  *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous

factual determination of the state court, two provisions of the AEDPA apply.  First, the AEDPA

provides that "a determination of a factual issue made by a State court shall be presumed to be

correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231,

240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim

"resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A).  To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court."  *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007).  This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'"  *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule.  *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004).  This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment."  *Leyva*, 504 F.3d at 365–66; *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).  Federal courts may not excuse a procedural default and grant relief unless: (1) the petitioner establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of federal law; or (2) the prisoner demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice."  *Leyva*, 504 F.3d at 366; *see also Coleman v. Thompson*, 501 U.S. 750 (1991).

A court may, however, elect to *deny* a procedurally defaulted and/or unexhausted claim on the merits under 28 U.S.C. § 2254(b)(2). *Osorio v. Anderson*, No. 17-1536, 2020 WL 206000, at *4 (D.N.J. Jan. 14, 2020) (citing *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005)).  In that scenario, if a claim did not receive an adjudication from the state courts on the merits, a federal habeas court must review the claim *de novo*. *See Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009).

III.     ANALYSIS

A.   Jury Instruction Claims

a.   Theft Jury Instruction

In Ground One, Petitioner contends that the trial court erred by failing to charge the jury

on theft as a lesser included offense of robbery. (D.E. 1, at 17.)  Petitioner argues that stealing Mr.

Quinones' wallet was separate from the fatal assault because the theft was "either . . . complete

before the fatal assault took place or that it was an 'afterthought after the violence,' meaning that

the fatal assault was complete before [Petitioner] decided to take Quinones' wallet." (*Id*.)

On habeas review, a district court must review the last reasoned state court decision on

each claim.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  The last reasoned state court decision

with respect to this claim is the Appellate Division's opinion on direct appeal.   The Appellate

Division denied the claim as follows:

> Defendant first claims that the trial court erred in declining to charge
> theft as a lesser-included offense of robbery. According to
> defendant, had the trial court done so, the jury might have acquitted
> him of robbery and found him guilty of only theft, thereby
> eliminating the statutory basis for felony murder. *See N.J.S.A.* 2C:
> 11–3(a)(3) (listing robbery, but not theft, as a predicate offense to
> felony murder); *see also State v. Gonzalez,* 318 *N.J.Super.* 527, 536
> (App.Div.), *certif. denied,* 161 *N.J.* 148 (1999) (noting that theft or
> attempted theft from the person is not a predicate crime for felony
> murder).
>
> A lesser-included offense is to be charged, even when not
> specifically requested by trial counsel, where potential guilt of that
> offense is "clearly indicate[d]" by the proofs. *State v.
> Jenkins,* 178 *N.J.* 347, 361 (2004); *State v. Choice,* 98 *N.J.* 295, 299
> (1985). However, on appellate review, the need for such an
> unrequested lesser-included offense charge "must jump off the

proverbial page." *State v. R.T.,* 205 *N.J.* 493, 510 (2011) (internal quotations omitted).

Even where such a charge is requested by trial counsel, *N.J.S.A* . 2C:1–8(d) instructs that a "court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." In *State v. Cassady,* 198 *N.J.* 165 (2009), the Supreme Court held that the appropriateness of an included offense charge requires: "(1) that the requested charge satisfy the definition of an included offense set forth in *N.J.S.A.* 2C:1–8(d), and (2) that there be a rational basis in the evidence to support a charge on that included offense." *Id.* at 178 (quoting *State v. Thomas,* 187 *N.J.* 119, 131 (2006)).

Here, the charge issue concerns the respective elements of theft and robbery. Theft involves a defendant's taking of any form of property by any variety of unlawful means. *See State v. Dixon,* 114 *N.J.* 111, 114 (1989); *see generally N.J.S.A.* 2C:20–1 to –38 (enumerating the various theft offenses).

By comparison, robbery occurs when a defendant, "in the course of committing a theft," inflicts bodily injury or uses force upon another person, or threatens another person or purposely puts him or her in fear of immediate bodily injury, or commits or threatens immediately any first or second degree crime. *N.J.S.A.* 2C:15–1(a). "An act shall be deemed to be included in the phrase 'in the course of committing a theft' if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission." *Ibid.*

The law distinguishes between situations in which the theft of property is an "afterthought" following a completed assault, threat, or use of force, as opposed to a robbery, in which the theft has a closer nexus in time or circumstance to the assaultive, forceful, or threatening act. *See, e.g., State v. Lopez,* 187 *N.J.* 91, 101 (2006); *see also Cassady, supra,* 198 *N.J.* at 178–79. This distinction noted in *Lopez* led to the creation of an optional paragraph in the model charge for robbery, which advises the jury in appropriate circumstances:

(CHARGE THE FOLLOWING IF THERE IS AN ISSUE REGARDING THE TIMING OF THE USE OF FORCE):

> To find the defendant guilty of robbery, the intent to commit a theft must precede or be coterminous with the use of force. In other words, the defendant must have formed the intent to commit a theft before or

during his/her use of force. If you find the defendant formed the intent to commit a theft after his/her use of force, then he/she cannot be found guilty of robbery.

[*Model Jury Charge (Criminal),* "Robbery In The First Degree (*N.J.S.A.* 2C:15–1)" (2007).]

In the present case, the trial judge chose not to read this so-called optional "*Lopez* paragraph" within the robbery charge because he did not consider the evidence to reflect any significant gap in time between when the victim was assaulted and when his wallet was stolen.

Defendant's trial counsel did not object to the omission of the *Lopez* paragraph, but he did request that the court charge theft as a lesser included offense. The judge rejected that request, essentially based on the same reasoning that this was an integrated criminal act involving both theft and the use of force.

On appeal, defendant argues that the court was obligated to charge theft here as a lesser included offense. He poses two main alternative theories of the facts: either (1) the victim was assaulted with the brick after his wallet was already stolen; or (2) the victim was first assaulted, and then, after that assault was complete, the perpetrator took his wallet as an afterthought. Neither theory is reasonably in accord with the trial proofs.

The trial witnesses' accounts, although diverging in certain respects, established that the beating of the victim with a brick and the theft of his wallet all took place as part of a continuous series of events occurring after the group surrounded the victim. There was no credible proof of a significant gap in time, place, or circumstance between the criminal acts, regardless of whether the actual use of force occurred before the theft, or vice-versa. Indeed, the initial circling of the victim—which is confirmed by the surveillance video—can be construed as conduct which "threatens another with or purposely puts him in fear of immediate bodily injury." *See N.J.S.A.* 2C:15–1(a)(2). No "special words" are required to convey such a threat under the robbery statute. *State ex rel. L.W.,* 333 *N.J.Super.* 492, 497 (App.Div.2000).

Defendant relies on *State v. Grissom,* 347 *N.J.Super.* 469 (App. Div.2002), to support his alternative theory that the theft was complete before the assault occurred, and therefore a robbery did not occur. In *Grissom,* the defendant appealed his criminal

9

conviction for robbery, arguing that the trial court had erred by refusing to charge the lesser-included offense of theft of services. *Id.* at 473. The defendant in *Grissom* had exited a taxi without paying, after looking through his pockets for the fare. *Id.* at 472. Then, the defendant walked away and the driver followed him in the taxi and demanded the fare without exiting the vehicle. *Id.* at 473. The defendant pointed a handgun at the driver and asked, "[A]re you looking for money?" *Ibid.* The driver drove away and alerted a police officer, who eventually apprehended defendant. *Ibid.* We reversed the defendant's conviction in *Grissom,* concluding that the lesser-included charge should have been issued because the evidence could form a rational basis for the jury to conclude that the defendant reached a point of at least temporary safety after committing the theft, and before committing the assault. *Id.* at 479.

Here, defendant contends, albeit as an alternative factual theory, that he reached a point of temporary safety after committing the theft of the victim's wallet. However, the evidence does not support such a claim. The proofs instead showed that the theft and assault were intertwined, starting when the victim was circled by the menacing group of "knock out" players that included defendant. The entire episode lasted only a few minutes. There is no proof that defendant ever left the crime scene or that he separated himself from the victim. As the prosecutor asserted and the trial judge reasonably accepted, the theft of the victim's wallet was not a mere "pickpocketing or purse snatching," but rather took place within a significant, continuous, violent encounter.

In sum, the trial judge did not err in declining in these circumstances to charge theft as a lesser included offense. There was no rational support in the record to treat the wallet-taking and the use of force here as independent, disconnected acts.

*Smith*, 2015 WL 4133190, at *2–4 (alteration in original).

Here, the state court's decision was not an unreasonable application of clearly established federal law, and Petitioner has not raised a valid federal claim. "The United States Supreme Court and the Third Circuit have made clear that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law." *Howard v. D'Ilio*, No. 14-4758, 2018 WL 1014168, at *5 (D.N.J. Feb. 22, 2018) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68

(1991); *Echols v. Ricci*, 492 F. App'x. 301, 312 (3d Cir. 2012)).  Instead, "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights." *Echols*, 492 F. App'x. at 312.

To warrant relief, a jury instructional error must have "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Henderson v. Kibbe*, 431 U.S. 145, 154, (1977).  It is not enough for the instruction to be "undesirable, erroneous, or even 'universally condemned.'" *Henderson*, 431 U.S. at 154 (quoting *Cupp*, 414 U.S. at 146).  The Supreme Court has held that petitioners face an "especially heavy" burden, when they base their argument on an omitted instruction, because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

With those principles in mind, the Supreme Court has never recognized that an individual has a due process right to jury instructions on lesser-included offenses in non-capital cases.  *See, e.g.*, *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error."); *Nayee v. D'ilio*, No. 15-1288, 2021 WL 1589352, at *16 (D.N.J. Apr. 23, 2021); *Blank v. D'Ilio*, No. 15-3596, 2018 WL 1919826, at *6–7 (D.N.J. Apr. 24, 2018); *Urcinoli v. Cathel*, No. 05–4776, 2010 WL 5253524, at * 17 (D.N.J. Dec. 17, 2010).  As Petitioner did not face the death penalty, clearly established federal law did not require the trial court to charge the jury on the lesser included offense of theft. *Cf. Blank*, 2018 WL 1919826, at *6–7; *Urcinoli*, 2010 WL 5253524, at *17.  Similarly, "[b]ecause   this is a non-capital case and involve[d] issues of state law," the Appellate Division, in denying the claim, did not unreasonably apply clearly established federal law. *Howard*, 2018 WL 1014168, at *5.

Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to habeas relief on Ground One.

### b.  First-Degree Robbery Jury Instruction

Next, under Ground Three, Petitioner contends that the jury instructions failed to include certain language on the elements of first-degree robbery. (D.E. 1, at 20.)  The trial court had inadvertently omitted the language explaining that to convict Petitioner of first, rather than second, degree robbery, the jury would have to find that Petitioner "purposely inflict[ed] or attempt[ed] to inflict serious bodily injury." N.J. Stat. § 2C:15-1(b).

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal.  The Appellate Division denied the claim as follows:

> As his third point, defendant asserts that the trial court erred by failing to instruct the jury fully on the elements of first-degree robbery, as charged in count three of the indictment. In particular, defendant spotlights that the court's charge on this count omitted advising the jury that the State was obligated to show that defendant "purposely caused serious bodily injury," beyond a reasonable doubt.
>
> We are not persuaded that defendant's robbery conviction must be reversed because of this inadvertent omission from a portion of the entire jury charge. The court did properly instruct the jury as to the meaning of a "purposeful" act, and also as to what constitutes "bodily injury" under the statute. The verdict sheet specifically included the appropriate definitional language for robbery as to count three. Considering, as we must, the charge as a whole, the jury was equipped with sufficient tools to find that defendant acted purposefully when inflicting serious bodily injury on the victim, and thus the first-degree robbery conviction was proper.
>
> Appellate courts "must not isolate the language [in the jury charge] challenged but must examine the remark in the context of the entire charge." *State    v.    DiFrisco,* 137 *N.J.* 434,    491    (1994), *cert.*

*denied,* 516 *U.S.* 1129, 116 *S.Ct.* 949, 133 *L. Ed.*2d 873 (1996). "A jury charge must adequately set forth the elements of an offense in a way that explains the law to the jury in an understandable manner." *Ibid.* "The test, therefore, is whether the charge in its entirety was ambiguous or misleading." *State v. Hipplewith,* 33 *N.J.* 300, 317 (1960).

The judge instructed that "the State is required to prove each of the following elements beyond a reasonable doubt: that defendant was in the course of committing a theft; that while in the course of committing the theft, the defendant knowingly inflicted bodily injury or used force upon the other." The judge then defined "purposely," and "bodily injury."

Defendant did not object to this aspect of the charge at trial, and therefore the plain error standard of review applies. *R.* 2:10–2; *State v. Ross,* 218 *N.J.* 130, 142–43 (2014). Our inquiry is whether the effect of the error is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon,* 57 *N.J.* 325, 336 (1971). Reading the charge as a whole, we are not convinced that the judge's omission raises a "reasonable doubt" that the jury was led to a result here that it would not otherwise have reached. *Ibid.*

Given the correct jury instruction as to the meaning of the key terms "purposely" and "bodily injury," the inclusion of a proper definition of first-degree robbery on the verdict sheet, and defendant's failure to object, we discern no need to vacate his conviction for first-degree robbery.

*Smith*, 2015 WL 4133190, at *5–6 (alteration in original).

The state court's decision was not an unreasonable application of clearly established federal law.  As noted, "it is not the role of the federal courts to review state court jury instruction rulings that are based on state law." *Howard*, 2018 WL 1014168, at *5 (citing *Estelle*, 502 U.S. at 67–68; *Echols*, 492 F. App'x. at 312).  Instead, "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights." *Echols*, 492 F. App'x. at 312.  To warrant relief, a jury instructional error must have "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147.  To meet this burden,

a petitioner must show that the instruction was more than erroneous, he must show that there was a "reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (quoting *Estelle*, 502 U.S. at 72). Additionally, courts may not judge the instruction in isolation, but must consider the instruction "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72.

Applying those principles here, Petitioner has failed to show that the erroneous charge "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147. The Appellate Division acknowledged that the trial judge failed to read the portion of the model charge that explained that the State must prove that Petitioner "purposely" caused "serious bodily injury," to convict Petitioner of first-degree robbery. *Smith*, 2015 WL 4133190, at *5–6. The court emphasized, however, that during other parts of the jury charge, the trial judge properly instructed "the jury as to the meaning of a 'purposeful' act, and also as to what constitutes '[serious] bodily injury' under the statute." *Id*. at *6; (*see also* D.E. 9-28, at 96:25 to 97:20, 106:13–19). The court also noted that defense counsel failed to object to the charge and that the jury's verdict sheet "specifically included the appropriate definitional language for [first-degree] robbery as to count three." *Smith*, 2015 WL 4133190, at *5–6; (*see also* D.E. 9-7, at 50).

Taken together, the Appellate Division considered the erroneous instruction "in the context of the instructions as a whole and the trial record," *Estelle*, 502 U.S. at 72, and concluded that the omission did not create a reasonable likelihood "that the jury was led to a result . . . that it would not otherwise have reached." *Smith*, 2015 WL 4133190, at *6. Thus, although the Appellate Division addressed the issue under the lens of state law, its reasoning complied with clearly established federal law. *See Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147.

14

As a result, Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.  Evidence Related Claim

Under Ground Two, Petitioner contends that the trial court erred by admitting the video-recorded statement of one of his co-defendants, Tyshaun Shannon. (D.E. 1, at 18–19.)  According to Petitioner, within that statement, "the jury heard . . . an account of prior robberies that several of the men who attacked Quinones, including [Petitioner], had committed at an unspecified earlier time." (*Id*. at 19.)  Petitioner argues that evidence of these prior bad acts violated his rights because they "were irrelevant and posed a tremendous risk of undue prejudice." (*Id*. at 18.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal.  The Appellate Division denied the claim as follows:

> In his second point, defendant asserts that he was unfairly prejudiced by the court's admission of a portion of the videotaped recording of co-defendant Tyshaun Shannon's statement recounting prior robberies that some of the individuals involved in the February 24, 2009 incident had committed at an unspecified, earlier time. The court allowed the State to play the entire statement to the jury after a hearing held pursuant to *State v. Gross,* 216 *N.J.Super.* 98 (App.Div.1987), *aff'd,* 121 *N.J.* 1 (1990).
>
> Defendant contends that Shannon's entire statement should not have been admitted, as his trial counsel had argued to the judge. Specifically, defense counsel noted the existence of "several prejudicial items" within Shannon's statement, including "hearsay." Defendant argues that although these references were not explained by his trial attorney in detail, the attorney was likely referring to the following portion of Shannon's questioning by the police:
>
> Q. Okay. Is this all the truth you're telling me here?
>
> A. Yes.

15

Q. Are you sure there's nothing else you could tell me that ...

A. I'm sure.

Q. Can help us out?

A. I'm sure.

Q. Alright, so Big Ty, Russ, and Lucias [sic]?

A. Yes.

Q. And it was Russ's idea ...

A. Yes.

Q. To go rob this man?

A. (inaudible)

Q. Have they done this before? Tell the truth?

A. I don't, I don't know about Russ and them. But Russ and them been telling me they been they, Big Ty and them be saying they be robbing people by the university taking their G1's.

Q. Their what?

A. Their G1's, they phones and stuff.

Q. What, what university?

A. Over there by um, it's a, it's a high school university?

Q. Where's that at?

A. I don't know where the university at. I never been in the university.

Mom: (Laughs)

Q. What's a G1?

A. It's uh, it's like,

Mom: Cell phone.

A. Like a cell phone.

Q. Okay. And what, what's this university thing at.

A. I don't know I know (inaudible) at.

Q. So your [sic] saying Ty and Russ been robbing people there?
A. Yeah.

Q. They've told you this?

A. Yeah taking their G1's.

Q. And how many G1's you think they got already?

A. Ty said he took it, gave it back. Then Russ took it and he gave it back and somebody else took it. I don't know, I forgot the boy name [sic] that said he took it.

Conceding that this portion of Shannon's questioning does not refer to him by name, defendant argues that the jury could have inferred that he was included in the collective pronoun when Shannon referred to "they" and "them." Defendant further argues that the portions of the statement alluding to the university cell phone robberies amount to inadmissible evidence of prior bad acts, and should have been excluded under *N.J.R.E.* 404(b). We disagree.

The portions of Shannon's police statement in question did not present the jury with evidence of prior uncharged acts of robbery committed by defendant. He was not mentioned by name within the specific passages relative to the university robberies. There was no reasonable basis for the jury to infer, by Shannon's generic reference to "they" and "them," that defendant participated with Ty and Russ in the perpetration of the prior robberies. The linkage to him is, at most, tenuous. Notably, the prosecutor did not refer to these university robberies in closing argument.

Defendant did not request a hearing to assess the admissibility of the contested portion of Shannon's statement pursuant to *N.J.R.E.* 404(b) or *N.J.R.E.* 104. Hence, an analysis pursuant to *State v. Cofield,* 127 *N.J.* 328 (1992), was not performed. However, even if defendant had requested such a hearing, the statement simply did not implicate defendant and therefore, the judge was not obligated to conduct a *Cofield* analysis.

17

*Smith*, 2015 WL 4133190, at *4–5 (footnote omitted).  Here, the state court's decision was not an unreasonable application of clearly established federal law.  In his direct appeals, save for a passing reference to the Sixth and Fourteenth Amendments, Petitioner relied entirely on the New Jersey Rules of Evidence and state law cases. (*See* D.E. 9-7, at 30–38.)  The Appellate Division, in turn, addressed the issue in terms of state law. *Smith*, 2015 WL 4133190, at *4–5.

To the extent Petitioner again challenges this evidence based on state law cases or the New Jersey Rules of Evidence, these arguments "are not within the province of [a federal habeas court] to address." *Oliver v. Santiago*, No. 14-1334, 2017 WL 2735409, at *9 (D.N.J. June 23, 2017) (alteration in original) (quoting *Bagarozy v. Goodwin*, No. 08-0468, 2008 WL 4416455, at *14 (D.N.J. Sept. 23, 2008)).  Such errors would have been errors of state law, and federal habeas "relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67;  *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).

Instead, "[t]o rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights." *E.g.*, *Sample v. D'Ilio*, No. 15-5487, 2018 WL 3054676, at *5 (D.N.J. June 20, 2018) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994); *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001)).

The Court does not find that the alleged errors rendered his trial fundamentally unfair. Petitioner focuses his argument on this portion of Mr. Shannon's statement:

> Q. Have they done this before? Tell the truth?
>
> A. I don't, I don't know about Russ and *them*. But Russ and *them* been telling me they been *they*, Big Ty and *them* be saying *they* be robbing people by the university taking their G1's.

(D.E. 9-7, at 69 (emphasis added).)   Petitioner ignores the portion immediately after, when the interviewing officer asked to clarify who was involved in the prior robberies, and Mr. Shannon identified only Russ and Big Ty:

> Q. Okay. And what, what's this university thing at.
>
> A. I don't know I know (inaudible) at.
>
> Q. *So your [sic] saying Ty and Russ been robbing people there*?
>
> A. *Yeah*.
>
> Q. They've told you this?
>
> A. Yeah taking their G1's.
>
> Q. And how many G1's you think they got already?
>
> A. Ty said he took it, gave it back. Then Russ took it and he gave it back and somebody else took it. I don't know, I forgot the boy name [sic] that said he took it.

(D.E. 9-7, at 70.)  Thus, Mr. Shannon's testimony twice confirmed that he was referring to Ty and Russ, as the individuals who had committed the prior robberies. (*Id*.)  Consequently, the Appellate Division reasonably concluded that the linkage to Petitioner was "at most, tenuous," and that there "was no reasonable basis for the jury to infer, by Shannon's generic reference to 'they' and 'them,' that [Petitioner] participated with Ty and Russ in the perpetration of the prior robberies."  *Smith*, 2015 WL 4133190, at *5.

Under these circumstances, this Court finds that Petitioner has failed to demonstrate an error that was so "arbitrary or prejudicial that it rendered the trial fundamentally unfair."  *Sample*, 2018 WL 3054676, at *5.  As a result, Petitioner has failed to show that the state court's decision was based on an unreasonable application of clearly established federal law or that its decision was

based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to habeas relief on Ground Two.

### C. Excessive Sentence Claim

Next, Petitioner contends that his sentence of 40 years with an 85% parole disqualifier was "manifestly excessive," an "abuse of discretion," and "unduly punitive." (D.E. 1, at 22.)  Petitioner offers no further elaboration, other than his belief that the "maximum"[2] of 40 years was too great a sentence for felony murder. (*Id*.)

A federal court's ability to review state sentences is limited to challenges based on "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *see also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67.

"The Eighth Amendment, which forbids cruel and unusual punishments contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors to determine whether a sentence is so disproportionate to the crime that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292 (1983).

The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment only forbids sentences that are "grossly disproportionate" for a conviction for the

---

[2] As discussed below, forty years is not the maximum sentence for felony murder.

crime involved.  *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at \*16–17 (D.N.J. Mar. 28, 2018).  If the petitioner fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge ends.  Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing*, 538 U.S. at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)); *United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014).  "Absent colorable allegations that his sentence constitutes cruel and unusual punishment . . . or that it is arbitrary or otherwise in violation of due process, the legality and length of his sentence are questions of state law" over which this Court has no jurisdiction. *E.g.*, *Rabaia v. New Jersey*, No. 15-4809, 2019 WL 699954, at \*12–13 (D.N.J. Feb. 20, 2019) (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

Petitioner fails to explain how his sentence violated any federal rights.  The trial court sentenced Petitioner to 40 years for felony murder, which was below the statutory limit of life in prison. N.J. Stat. § 2C:11-3(b)(1) ("Murder is a crime of the first degree but a person convicted of murder shall be sentenced, except as provided in paragraphs (2), (3) and (4) of this subsection, by the court to a term of 30 years, during which the person shall not be eligible for parole, or be sentenced to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole.").  "Generally, a sentence within the [statutory] limits . . . is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011).

In addition, 40 years for felony murder does not rise to the level of disproportionality that violates the Eighth Amendment. *See, e.g.*, *Wilson v. Cathel*, No. 04-4705, 2006 WL 3796863, at \*10 (D.N.J. Dec. 21, 2006) (finding that a life sentence for felony murder did not rise to the level of disproportionality that violates the Eighth Amendment); *Peoples v. Cathel*, No. 05-5916, 2006

WL 3419787, at *12 (D.N.J. Nov. 21, 2006) (same).  Petitioner, along with his co-perpetrators, chased and surrounded an innocent bystander—who's last moments were spent in terror— and then beat him with a brick as part of a vicious "game;" 40 years was not disproportionate. *Smith*, 2015 WL 4133190, at *1.   Consequently, Petitioner's sentence does not violate the Eighth Amendment.

In addition, Petitioner's argument that the trial court "abused its discretion," is a question of state law over which this Court has no jurisdiction.  It "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *McGuire*, 502 U.S. at 67–68.  For the foregoing reasons, Petitioner is not entitled to habeas relief on this ground.

### D.  Ineffective Assistance of Counsel Claims

Petitioner next raises multiple claims of ineffective assistance of counsel.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI.  The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the petitioner. *See id.* at 687.

The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.  In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id*.  The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688–89.  Thus, the

standard is highly deferential, and courts presume that counsel has "rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).  The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The petitioner bears the burden of demonstrating how he was prejudiced.  Thus, where a petition contains "no factual matter . . . and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280–81 (D.N.J. 2015) (internal quotation marks omitted) (citations omitted).

A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" courts should follow that course. *Id.*  Finally, even if a petitioner can establish both prongs of *Strickland*, a habeas petition fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti*, 537 U.S. 19, 24–25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

### 1.  Vague Ineffective Assistance of Counsel Claims

The Court first addresses Grounds Five and Ten.  Under Ground Five, Petitioner contends that counsel's "actions were not reasonable." (D.E. 1, at 23–24.)  As to Ground Ten, Petitioner alleges that counsel was "not prepared for trial," and "failed to consult with petitioner so as to properly prepare a cogent defense or plead guilty." (D.E. 1, at 32.)  Petitioner offers no further elaboration.

As a preliminary matter, the Court finds that these claims fail to comply with Habeas Rule 2(c).  Pursuant to that Rule, a § 2254 petition must "specify all the grounds for relief available to the petitioner [and] state the facts supporting each ground."  Petitions which provide no more than "vague and conclusory grounds for habeas relief are subject to summary dismissal" under the rule. *Anderson v. Pennsylvania Attorney General*, 82 F. App'x 745, 749 (3d Cir. 2003); *see also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).  Here, Petitioner fails to explain, with any specificity, how he believes trial counsel was deficient or how those deficiencies prejudiced Petitioner.

In his PCR briefing, it appears that these "grounds" simply presented the general law regarding ineffective assistance of counsel, while other grounds addressed the substance of Petitioner's claims. (D.E. 9-12, at 8–14; D.E. 9–17, at 18–21.)  As a result, it appears that Petitioner is not raising independent claims under Grounds Five and Ten.  Consequently, the Court will summarily deny Grounds Five and Ten as vague and conclusory under Habeas Rule 2.  Alternatively, to the extent that the Appellate Division summarily denied these "grounds" as separate claims, the Appellate Division reasonably applied *Strickland*.  Bald assertions are insufficient to establish a *prima facie* case of ineffective assistance of counsel.  Accordingly, Petitioner is not entitled to habeas relief on Grounds Five and Ten.

### 2. Ineffective Assistance of Counsel in Advising Petitioner Not to Testify at Trial

Next, under Ground Six, Petitioner contends that counsel was ineffective for advising Petitioner not to testify at trial.  Petitioner argues, with no further explanation, that he "was cautioned against testifying when the un-rebutted testimony was overwhelmingly damaging," and that "said advice was completely erroneous and detrimental to the defense." (D.E. 1, at 25.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR court's opinion and added:

> As for the right to testify, the decision to waive that right rested with the defendant. *State v. Savage*, 120 N.J. 594, 631 (1990). Defendant admitted that counsel apprised him of his right to testify. Trial counsel testified that he advised against it, and explained to defendant his reasoning. Counsel had subjected defendant to a mock cross-examination, to demonstrate the difficulty he would have on the stand. Defendant was convinced. "[I]t is the responsibility of a defendant's counsel . . . to advise defendant on whether or not to testify and to explain the tactical advantages or disadvantages of doing so or not doing so." *Id.* at 630 (quoting *State v. Bogus*, 223 N.J. Super. 409, 423 (App. Div. 1988). Trial counsel met that responsibility.
>
> However, defendant takes issue with his attorney's underlying conclusion that it would have been unwise to testify. He argues the case for conviction was so strong after the State rested that defendant's only hope for acquittal depended on his taking the stand in his own defense. Hindsight is twenty-twenty, but a PCR court must avoid "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Who to call as a witness is a difficult strategic decision. *State v. Pierre*, 223 N.J. 560, 579 (2015). Defendant failed to show that his trial counsel was deficient. Indeed, aside from contending that he would have denied personally taking the victim's wallet, he provided no proffer of what he would have said on the witness stand to turn the tide of the trial.

*Smith*, 2018 WL 3826061, at *2. The PCR court had held:

> Mr. Sheehan testified that before and during trial, he advised Petitioner that he had the right to testify. However, he advised Petitioner that it would not be in his best interests to testify because of the lack of physical evidence and an unidentifiable video. It was his opinion that by testifying, Petitioner would be placing himself at the scene of the crime and identifying himself as one of the participants. He also advised Petitioner that if he testified, the State might try to rattle him on the stand and he believed that there was a stronger chance of acquittal if Petitioner did not testify.
>
> Petitioner was advised several times of his right to testify by counsel. Petitioner was further advised of his right to testify by the

> Court on March 5, 2012, during the trial. This Court finds the testimony of Mr. Sheehan to be credible. Mr. Sheehan's advice that Petitioner not testify was a strategic decision rationally based on his professional judgment and, pursuant to *State v. Davis*, 116 N.J. 341, will not support Petitioner's claim of ineffective assistance of counsel.

(D.E. 9-15, at 5.)  With those decisions in mind, Petitioner has not shown that the state court unreasonably applied either of the *Strickland* prongs.

As to the first prong, deficient performance, the Appellate Division noted that counsel explained his reasoning to Petitioner as to why he should not testify. *Smith*, 2018 WL 3826061, at *2.  More specifically, counsel advised that by testifying, Petitioner would place himself at the scene, identify himself as a participant, and would potentially provide adverse testimony on cross-examination. (D.E. 9-15, at 5.)  In light of those reasons, along with the lack of physical or video evidence placing Petitioner at the scene, this Court agrees that counsel exercised reasonable professional judgment when he made the strategic choice to advise Petitioner against testifying. Consequently, the Appellate Division reasonably concluded that Petitioner failed to demonstrate that counsel's performance was deficient.

As to the second prong, prejudice, the Appellate Division emphasized that, "aside from contending that [Petitioner] would have denied personally taking the victim's wallet, he provided no proffer of what he would have said on the witness stand to turn the tide of the trial." *Smith*, 2018 WL 3826061, at *2.  In his Petition, Petitioner again fails to explain what he would have said as a witness, and Petitioner did not file a reply.  As a result, on this record, this Court finds that the Appellate Division reasonably concluded that Petitioner failed to establish *Strickland* prejudice. Taken together, Petitioner has failed to show that the Appellate Division unreasonably applied either prong of *Strickland*, and he is not entitled to habeas relief on Ground Six.

26

### 3.   Ineffective Assistance of Counsel in Advising Petitioner Regarding the Plea Offer

Next, under Ground Seven, Petitioner contends that counsel was ineffective because he "never advised [Petitioner] to plead guilty." (D.E. 1, at 27.)  Petitioner argues that the "transcripts in [the] trial contain[] overwhelming proof against"[3] him, and that "competent advice would have been to accept the plea offer of 20 years." (*Id.*)  Further, Petitioner contends that had he "received the advice to plead guilty, he would have done so; however, he received no advi[ce] at all and therefore proceeded to trial." (*Id.*)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR court's opinion and added:

> With respect to the plea offer, defendant was obliged to show that but for the ineffective advice of counsel, he would have accepted the plea offer and received a lesser sentence than he received after trial. *See Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012). Defendant failed to show his trial counsel's advice was ineffective. The court credited defendant's counsel. He testified he told defendant he could still take the twenty-five-year plea deal, but defendant decided to go to trial.

*Smith*, 2018 WL 3826061, at *2.  The PCR court had held:

> Petitioner's next claim is that his counsel was ineffective because he did not advise him of the plea offer of twenty (20) years that the State extended. Mr. Sheehan testified that the plea offer was initially thirty (30) years with thirty (30) years of parole ineligibility. Mr. Sheehan countered with single digit offers. Subsequently, co-defendants Augustus Bey, Markise Dawson, and Tyshaun Shannon accepted lower plea offers, which prevented Mr. Sheehan from effectively negotiating a plea offer in the teens because Petitioner was considered the main defendant to the State.

---

[3] Petitioner appears to be making this claim with the benefit of hindsight after the trial, rather than addressing his circumstances prior to trial.

Eventually, Mr. Sheehan negotiated with the State and tentatively agreed upon a plea of twenty (20) years subject to the No Early Release Act (85% parole ineligibility). Before plea cutoff, a family member spoke with Petitioner about the plea offer. Petitioner eventually agreed to accept twenty (20) years with the understanding that *Mr.* Sheehan would request a lesser sentence. However, when the prosecutor took the offer to a supervisor for approval, the offer increased to twenty-five (25) years, Petitioner rejected the plea offer of twenty-five (25) years and proceeded to trial.

At the evidentiary hearing, Petitioner testified that Mr. Sheehan told him that the plea offer was twenty (20) years. Petitioner testified that he would have taken a twenty (20) year plea offer, but that offer was not available. Our law is clear that "a defendant has no legal entitlement to compel a plea offer or a plea bargain; the decision whether to engage in such bargaining rests with the prosecutor." *State v. Williams*, 277 N.J. Super. 40, 46 (1994).

Mr. Sheehan was not ineffective because it was never within his power to guarantee Petitioner a favorable plea offer. Moreover, criminal defendants do not have a constitutional right to specific performance of an original plea offer. *See Lafler v. Cooper*, 132 S.Ct. 1376 (2012).

Petitioner also testified that if Mr. Sheehan had told him he would be unable to win the trial, he would not have gone to trial. However, there is no guarantee of an outcome at trial. Mr. Sheehan stated that it is his practice to discuss the strengths and weaknesses of every case with his clients and was not ineffective by failing to tell Petitioner, with certainty, the outcome of his case.

(D.E. 9-15, at 5.)  With those decisions in mind, Petitioner has not shown that the state court unreasonably applied either of the *Strickland* prongs.

The PCR court found trial counsel to be credible when he testified that "it is his practice to discuss the strengths and weaknesses of every case with his clients," and that he conveyed the 25-year plea offer to Petitioner. (*Id.*)  As to the 20-year plea offer, Petitioner testified that he was advised of the offer and agreed to take it, but that the State had rescinded the offer, countering with 25 years. (*Id.*; D.E. 9-30, at 32:9 to 34:6.)  As a result, the PCR court concluded that Petitioner

received competent legal advice and did not believe Petitioner's allegations that he received no advice regarding the plea offers. (*Id*.) This Court presumes that those factual determinations were correct. 28 U.S.C. § 2254(e)(1); *Miller-El*, 545 U.S. at 240. Petitioner's bare assertion that he never received any advice regarding the plea offers is contrary to his testimony at the PCR hearing and falls far short of rebutting the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Ultimately, Petitioner alleges that counsel should have advised him to plead guilty, rather than allow Petitioner to arrive at his own conclusion, after explaining the strengths and weaknesses of the case to Petitioner. To that point, trial counsel explained why he believed he could win, which included the lack of physical and video evidence placing Petitioner at the scene, and the weak and inconsistent testimony of his co-perpetrators. (D.E. 30, at 22:19 to 24:7.) Based on that reasoning, the PCR court found that counsel exercised reasonable professional judgment in advising Petitioner that there was a meaningful chance of acquittal, rather than advise him that the case was hopeless. (D.E. 9-15, at 5.) As the PCR court appropriately recognized, no one can guarantee an outcome at trial. (*Id*.)

Consequently, the Appellate Division, in adopting the PCR court's reasoning, reasonably concluded that failing to advise Petitioner to plead guilty was not deficient performance. Petitioner has failed to show that the Appellate Division unreasonably applied *Strickland*, or that it based its decision on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on Ground Seven.

### 4.  Ineffective Assistance of Counsel for Failing to Move to Dismiss the Robbery and Felony Murder Counts

Finally, the Court will address Grounds Eight and Nine together, as Ground Eight is contingent on Ground Nine.[4]  Under Ground Nine, Petitioner contends that counsel was ineffective for failing to move to dismiss the "the count of first-degree robbery . . . which was used to establish the charge of felony murder." (D.E. 9-17, at 29; *see also* D.E. 1, at 30.)  Then, under Ground Eight, Petitioner contends that counsel should have moved to dismiss the felony murder count because there was insufficient evidence before the grand jury to indict Petitioner of robbery. (D.E. 1, at 28–29.)  The Petition does not elaborate on these points, and Petitioner's PCR brief summarily concludes that "there was no credible evidence of a taking of anything [by] the defendant." (D.E. 9-12, at 24.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR court's opinion and added that the claim lacked "sufficient merit to warrant discussion." *Smith*, 2018 WL 3826061, at *3.  The PCR court had held:

> Petitioner's final argument is that his counsel was ineffective by failing to file a motion to dismiss the felony murder charge. Mr. Sheehan testified that he did not file a motion to dismiss the felony murder charge because he felt that it was an issue for trial. He did, however, file a Motion pursuant to *State v. Reyes*, 50 N.J. 454 (1967) and R. 3:18-1, at the close of the State's case to dismiss all counts, including the felony murder charge. These were strategic choices that, pursuant to *State v. Davis*, 116 N.J. 341 (1989), will not support a claim of ineffective assistance of counsel.

(D.E. 9-15, at 7.)  The state court's decision was not an unreasonable application of clearly established federal law.

---

[4] Petitioner raised these issues as one claim during his PCR proceedings. (D.E. 9-17, at 29.)

Because there is no federal right to a state criminal grand jury process, defects in a grand jury proceeding that result in an indictment are not generally challengeable in habeas cases absent some other basis for finding a constitutional violation. *E.g.*, *Wainwright v. Goode*, 464 U.S. 78, 86 (1983); *Yough v. Lord*, No. 19-601, 2020 WL 6689854, at *9 (D.N.J. Nov. 13, 2020); *Potter v. Att'y Gen. of New Jersey*, No. 15-8784, 2018 WL 3201799, at *7 (D.N.J. June 29, 2018). Further, under most circumstances, "a subsequent guilty verdict from a petit jury" will render harmless any alleged defect before the grand jury. *Yough*, 2020 WL 6689854, at *9; *see also United States v. Merchanik*, 475 U.S. 66, 72–73 (1986); *United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993) (finding that with the exception of a claim of racial discrimination in the selection of grand jurors, a "petit jury's guilty verdict render[s] any prosecutorial misconduct before the indicting grand jury harmless").

Applying those principles here, assuming *arguendo* that "there was no credible evidence of a taking of anything" before the grand jury, the petit jury's guilty verdict "cured any defect in the grand jury proceeding and rendered any misconduct harmless." *United States v. Solomon*, No. 05-0385, 2013 WL 869648, at *7 (W.D. Pa. Mar. 7, 2013) (quoting *United States v. Muhammad*, 336 F. App'x 188, 193 (3d Cir. 2009)). As the Supreme Court explained in *Merchanik*, even if deficiencies affected the grand jury's decision to indict:

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Merchanik*, 475 U.S. at 70.

Returning then to the *Strickland* analysis, even assuming that counsel was deficient for failing to challenge the robbery and felony murder counts in the indictment, Petitioner cannot

demonstrate that he suffered prejudice.  In other words, because the petit jury's verdict rendered the alleged grand jury error harmless, Petitioner cannot show that he suffered prejudice under *Strickland*.  As Petitioner cannot show that he suffered *Strickland* prejudice, he has failed to demonstrate that the state court's decision was based on an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on Grounds Eight and Nine.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Petitioner has not made a substantial showing of a denial of a constitutional right.  Accordingly, this Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the foregoing reasons discussed, the Court will deny the Petition and will not issue a certificate of appealability.  An appropriate Order accompanies this Opinion.

Dated: May 19, 2022

JOHN MICHAEL VAZQUEZ
United States District Judge

32